United States District Court
Southern District of Texas
**ENTERED**
July 09, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LINDA  SAPP, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:19-CV-2076 |
| | § | |
| CHAMBERLAIN COLLEGE OF | § | |
| NURSING, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is a motion to dismiss filed by the defendants, Chamberlain College of Nursing ("Chamberlain") and Kay Watkins ("Watkins"). The motion (Dkt. 27) is **GRANTED** as to the plaintiff's claims against Chamberlain. Watkins was improperly joined and must be dismissed without prejudice, so the motion to dismiss is **DENIED AS MOOT** as to the plaintiff's claims against Watkins.

## FACTUAL AND PROCEDURAL BACKGROUND

The plaintiff, Linda Sapp ("Sapp"), worked for Chamberlain as an assistant professor in its nursing school in Houston (Dkt. 9 at p. 2). Sapp was directly supervised by Watkins, who was the Associate Dean of Faculty (Dkt. 9 at p. 2). Apparently, Sapp and Watkins did not work well together. Soon after Sapp started working for Chamberlain, Watkins placed Sapp on a performance improvement plan (Dkt. 9 at p. 4). According to Sapp's pleadings, the performance improvement plan was unwarranted and unduly onerous and was simply the culmination of a personal vendetta against Sapp: "[Watkins] obviously had an agenda and wanted [Sapp] gone" (Dkt. 9 at p. 4).

The tension between Sapp and Watkins escalated after Watkins placed Sapp on the performance improvement plan. Sapp filed three different administrative complaints against Watkins, one each for "harassment and retaliation" and a third that Sapp describes as "an ethics complaint" (Dkt. 9 at p. 5). Sapp alleges that Watkins was undeterred by the complaints and that Watkins continued to make false allegations about Sapp's job performance (Dkt. 9 at p. 5).

Ultimately, Chamberlain fired Sapp for failing to satisfactorily complete her performance improvement plan (Dkt. 9 at p. 6). The performance improvement plan required Sapp to draft examination questions, and Sapp's termination letter stated that she was terminated for cause because she had submitted "forged" or "copied" examination questions (Dkt. 9 at p. 6). Sapp insists that the plagiarism allegations are false and that Watkins explicitly approved of Sapp's revising existing questions for submission (Dkt. 9 at p. 6).

Sapp sued Chamberlain and Watkins in Texas state court (Dkt. 1-1). Chamberlain removed the lawsuit to this Court under the diversity jurisdiction statute, 28 U.S.C. § 1332 (Dkt. 1). Even though Watkins is a nondiverse defendant, Chamberlain is arguing that Watkins is improperly joined (Dkt. 1 at p. 2).[1] Sapp has not filed a motion to remand.

---

[1] In its notice of removal, Chamberlain also appears to argue that, even if Watkins was properly joined, Watkins's nondiverse citizenship must be disregarded because Watkins had not been served with process at the time of removal (Dkt. 1 at p. 2). The Court disagrees. "A non-resident defendant cannot remove an action if the citizenship of any co-defendant, joined by the plaintiff in good faith, destroys complete diversity, regardless of service or non-service upon the co-defendant. Whenever federal jurisdiction in a removal case depends upon complete diversity, the existence of diversity is determined from the fact of citizenship of the parties named and not from the fact of service." *New York Life Insurance Co. v. Deshotel*, 142 F.3d 873, 883–84 (5th Cir. 1998) (collecting cases). The lone case cited by Chamberlain in support of its position does

In her original petition in state court, Sapp asserted claims of tortious interference with a contract and fraud against the defendants (Dkt. 1-1 at pp. 3, 6–7). Sapp has amended her pleadings twice since Chamberlain removed the case; her live pleading retains the tortious interference and fraud claims against both defendants and adds a breach of contract claim against Chamberlain (Dkt. 9 at p. 6). The defendants' motion to dismiss attacks Sapp's live pleading (Dkt. 27 at p. 1).

## SUBJECT MATTER JURISDICTION

Before it examines the merits of the defendants' motion to dismiss, the Court must determine whether it has subject matter jurisdiction over this lawsuit. The Court has an "independent obligation" to make this determination even though Sapp has not filed a motion to remand, as subject matter jurisdiction "can never be forfeited or waived." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 501 (2006) (quotation marks omitted); *see also Gasch v. Hartford Accident & Indemnity Co.*, 491 F.3d 278, 279–80 (5th Cir. 2007) (vacating summary judgment in favor of defendants and remanding case to state court after considering existence of federal subject matter jurisdiction *sua sponte*). As a matter of fact, "as long as a nondiverse party remains joined, the *only* issue the court may consider is that of jurisdiction itself." *International Energy Ventures Management, L.L.C. v. United Energy Group, Ltd.*, 818 F.3d 193, 209 (5th Cir. 2016) (emphasis in original). And since it is not waivable, subject matter jurisdiction "cannot be conferred by consent,

---

not contradict *Deshotel* and in fact discusses an entirely different issue: when a defendant's deadline to remove a case begins to run. *See Thompson v. Deutsche Bank National Trust Co.*, 775 F.3d 298, 303 (5th Cir. 2014) ("[A] defendant's right to removal runs from the date on which it is formally served with process.").

agreement, or other conduct of the parties." *Gasch*, 491 F.3d at 284 (quotation marks omitted) (holding that a purported stipulation by the parties that diversity jurisdiction existed could not create subject matter jurisdiction when the properly joined parties were not diverse).

### A. Diversity jurisdiction

Generally, a defendant may remove to federal court any state court civil action over which the federal court would have original jurisdiction. 28 U.S.C. § 1441(a). Federal courts have original jurisdiction—commonly referred to as "diversity jurisdiction"—over civil actions in which: (1) all persons on one side of the controversy are citizens of different states than all persons on the other side; and (2) the amount in controversy exceeds $75,000.00, exclusive of interest and costs. 28 U.S.C. § 1332; *see also McLaughlin v. Miss. Power Co.*, 376 F.3d 344, 353 (5th Cir. 2004). If the amount-in-controversy requirement is met and a nondiverse defendant has been improperly joined to defeat diversity, the improperly joined defendant is dismissed without prejudice, and the case continues against the diverse defendants. *International Energy Ventures*, 818 F.3d at 206, 209–10 & n.50. Chamberlain argues that this Court has original jurisdiction over this case under the diversity jurisdiction statute. As the removing party, Chamberlain bears the burden of establishing by a preponderance of the evidence that removal was proper. *Manguno v. Prudential Prop. & Cas. Ins. Co*., 276 F.3d 720, 723 (5th Cir. 2002).

### i.   The amount-in-controversy requirement

The Court will first examine whether the amount-in-controversy requirement is met. When, as here, the state-court petition does not include a specific monetary demand,

the defendant meets its burden of establishing the requisite amount in controversy for diversity jurisdiction if: "(1) it is apparent from the face of the petition that the claims exceed $75,000, or, alternatively, (2) the defendant sets forth summary judgment type evidence of facts in controversy that support a finding of the requisite amount." *Id.* (quotation marks omitted). Admissions by a plaintiff's counsel regarding the amount in controversy can also carry the defendant's burden. *Schwenk v. Cobra Manufacturing Co.*, 322 F. Supp. 2d 676, 678–79 (E.D. Va. 2004) (holding that the plaintiff's counsel's admission during oral argument that he intended to amend his pleadings to seek an amount in excess of $75,000 established that the amount-in-controversy requirement was met).

Sapp's counsel stated to Magistrate Judge Edison at the initial scheduling conference in this case that the federal courts could properly exercise diversity jurisdiction. *See* audio recording of initial scheduling conference at 9:59 a.m. Necessarily subsumed within that statement is an admission that Sapp seeks to recover an amount greater than the jurisdictional minimum. "That admission alone is sufficient to find that the amount in controversy exceeds the $75,000 threshold required under 28 U.S.C. § 1332(a)." *Id.* Since nothing in the record indicates that it is legally certain that Sapp will recover an amount less than the jurisdictional minimum, the Court finds that the amount-in-controversy requirement is met. *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1412 (5th Cir. 1995) ("[O]nce a defendant is able to show that the amount in controversy exceeds the jurisdictional amount, removal is proper, provided plaintiff has not shown that it is

legally certain that his recovery will not exceed the amount stated in the state complaint.").

> ii.   *The diversity-of-citizenship requirement*

That the amount-in-controversy requirement is met, however, is not enough on its own to vest this Court with diversity jurisdiction. The other statutory requirement is that Sapp must be a citizen of a different state than all properly joined defendants. *McLaughlin*, 376 F.3d at 353; *Smallwood v. Illinois Central Railroad Co.*, 385 F.3d 568, 572–73 (5th Cir. 2004). With regard to this requirement, Sapp's counsel's agreement that the federal courts have jurisdiction over this case is completely immaterial; irrespective of what counsel pleads or says, the Court's jurisdiction (or lack thereof) depends entirely on the properly joined parties' citizenship. *Gasch*, 491 F.3d at 284. Diversity jurisdiction is absent if any plaintiff in a case is a citizen of the same state as any named defendant, provided that the nondiverse defendant has been properly joined. *Smallwood*, 385 F.3d at 572–73. Sapp and Watkins are both citizens of Texas, so the Court must examine the propriety of Watkins's joinder.

> a.   <u>Improper joinder</u>

If the plaintiff has named a nondiverse defendant, a removing diverse defendant must prove that the nondiverse defendant was improperly joined in order to establish diversity jurisdiction. *Id*. at 575. As relevant here, the diverse defendant can carry that burden by demonstrating "that there is no reasonable basis for the [federal] district court to predict that the plaintiff might be able to recover against [the] in-state defendant." *Id.* at 573. In evaluating whether there exists a reasonable basis to predict that the plaintiff

might be able to recover against the nondiverse defendant, the district court "may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant." *Id*. When conducting the Rule 12(b)(6)-type analysis, the district court evaluates the plaintiff's allegations against the nondiverse defendant using federal pleading standards. *International Energy Ventures*, 818 F.3d at 200. For jurisdictional purposes, the relevant allegations against the nondiverse defendant are the "claims in the state court complaint as it exists at the time of removal[.]" *Cavallini v. State Farm Mutual Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995).

b.   Federal pleading standards

Rule 8 of the Federal Rules of Civil Procedure requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion filed under Federal Rule of Civil Procedure 12(b)(6) tests a pleading's compliance with this requirement and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). A complaint can be dismissed under Rule 12(b)(6) if its well-pleaded factual allegations, when taken as true and viewed in the light most favorable to the plaintiff, do not state a claim that is plausible on its face. *Amacker v. Renaissance Asset Mgmt., LLC*, 657 F.3d 252, 254 (5th Cir. 2011); *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). As the Fifth Circuit has further clarified:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. This includes the basic requirement that the facts plausibly establish each required element for each legal claim. However, a complaint is insufficient if it offers only labels and conclusions, or a formulaic recitation of the elements of a cause of action.
>
> *Coleman v. Sweetin*, 745 F.3d 756, 763–64 (5th Cir. 2014) (quotation marks and citations omitted).

Additionally, allegations of fraud must be pled with particularity under the Federal Rules of Civil Procedure. Federal Rule of Civil Procedure 9(b) "supplements" Rule 8 and requires a plaintiff who is pleading fraud to allege "the time, place and contents of the false representation, as well as the identity of the person making the misrepresentation and what that person obtained thereby." *IAS Services Group, L.L.C. v. Jim Buckley & Associates, Inc.*, 900 F.3d 640, 647 (5th Cir. 2018) (quotation marks and brackets omitted). Rule 9 allows conditions of the mind, such as scienter, malice, intent, or knowledge, to be averred generally; but "case law amply demonstrates that pleading scienter requires more than a simple allegation that a defendant had fraudulent intent." *Tuchman v. DSC Communications Corp*., 14 F.3d 1061, 1068 (5th Cir. 1994). "To plead scienter adequately, a plaintiff must set forth specific facts that support an inference of fraud." *Id*. Rule 9(b)'s "ultimate meaning is context-specific[,]" but at bottom it is intended to "provide defendants with fair notice of the plaintiffs' claims, protect defendants from harm to their reputation and goodwill, reduce the number of strike suits, and prevent plaintiffs from filing baseless claims and then attempting to discover unknown wrongs." *IAS Services Group*, 900 F.3d at 647 (quotation marks and brackets

omitted). "State law fraud claims are subject to the heightened pleading requirements of Rule 9(b)." *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 550–51 (5th Cir. 2010).

### c. Sapp's claims against Watkins

After applying the appropriate pleading sufficiency standards to the allegations in Sapp's state-court petition, the Court concludes that there is no reasonable basis for the Court to predict that Sapp might be able to recover against Watkins with those allegations. Sapp's state-court petition alleges two causes of action under Texas law against Watkins: fraud and tortious interference with a contract. Sapp's allegations do not state a claim against Watkins under either cause of action.

### Fraud

To establish fraud under Texas law, a plaintiff must show that: (1) the defendant made a false, material representation; (2) the defendant knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth; (3) the defendant intended to induce the plaintiff to act upon the representation; and (4) the plaintiff justifiably relied on the representation, which caused the plaintiff injury. *Barrow-Shaver Resources Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 496 (Tex. 2019). Additionally, federal pleading standards require a plaintiff who is pleading fraud to allege "the time, place and contents of the false representation, as well as the identity of the person making the misrepresentation and what that person obtained thereby." *IAS Services Group, L.L.C.*, 900 F.3d at 647 (quotation marks and brackets omitted). Sapp's allegations of fraud are too vague to satisfy the applicable pleading standards.

Sapp's fraud allegations against both defendants, in their entirety, read:

> Defendants Watkins and Chamberlain made representations to Plaintiff that were false and that Defendants knew were false. his performance improvement plan as a coaching tool was an effort help him succeed [sic]. Defendants, particularly Defendant Watkins, knew that representation was false or at least made recklessly with the intent that Plaintiff rely on the representations and work to succeed, as it were, in the performance improvement plan and regarding test questions. Plaintiff relied on that representations [sic] to no avail; Defendant Watkins wholly ignored Plaintiff's good efforts and responses and caused Plaintiff injury. Defendant Chamberlain ratified and approved that injury. When all else failed and Plaintiff was still there Defendants fired her for false reasons.
> Dkt. 1-1 at pp. 6–7.

These allegations include none of the information that Rule 9(b) requires. Focusing on Watkins specifically, it is not at all clear what false representation Watkins allegedly made, when she made it, where she made it, or what she obtained by making it. The best that the Court can surmise is that someone—it is unclear who—allegedly made some false representation to Sapp about the motivation behind her performance improvement plan. But that interpretation of these allegations is no more than a guess that is based on the inclusion of a sentence fragment, seemingly copied and pasted from another pleading, that refers to Sapp as a man. The Court cannot even determine whether there was one false representation or several: Sapp uses both the singular and plural forms of the word "representation" when setting forth her fraud claim. These allegations are simply insufficient to state a claim for fraud under Rule 9(b), for "without sufficient detail regarding the alleged misrepresentation, no plaintiff could plausibly plead that he or she actually relied on it." *IAS Services Group*, 900 F.3d at 648.

Moreover, the Court is mindful that Rule 9(b) is context-specific in application and was designed in part to guard against baseless claims. *Id.* at 647. Given that Sapp's

fraud claim arises in the employment context and appears to be based entirely on her former employer's imposition of a performance metric, allowing a fraud claim to go forward on the threadbare allegations provided here would undermine the gatekeeping purposes of Rule 9(b). Employment in Texas is presumptively at-will, so the general rule in Texas is that, "absent a specific agreement to the contrary, employment may be terminated by the employer or the employee for good cause, bad cause, or no cause at all." *Midland Judicial District Community Supervision and Corrections Department v. Jones*, 92 S.W.3d 486, 487 (Tex. 2002). In order to overcome the presumption of at-will employment, an employee must point to statements by an employer that "unequivocally indicate a definite intent to be bound not to terminate the employee except under clearly specified circumstances." *Id.* (quotation marks and ellipsis omitted). The at-will employment doctrine erects a high bar for fraud claims brought against an employer in Texas: in answering certified questions from the Fifth Circuit, the Texas Supreme Court recently clarified that "an at-will employee cannot bring an action for fraud that is dependent on continued employment." *Sawyer v. E.I. Du Pont De Nemours and Co.*, 430 S.W.3d 396, 402 (Tex. 2014). Sapp's state-court petition does not address the presumption that Sapp was an at-will employee and does not plead facts that would allow recovery under a fraud cause of action in light of the Texas Supreme Court's *Sawyer* opinion. Neither Rule 9(b) nor Texas law will allow a plaintiff to use bare allegations of fraud to circumvent the at-will nature of an employment relationship. *Id.* at 401–02 ("To allow a promise that is contingent on continued at-will employment to be enforced in a suit for fraud would mock the refusal of enforcement in a suit for breach of contract,

making the non-existence of a contract action largely irrelevant, and would significantly impair the at-will rule."); *see also Sawyer v. E.I. Du Pont De Nemours and Co.*, 754 F.3d 313, 316 (5th Cir. 2014) (opinion issued after receipt of answers to certified questions) ("The non-covered employees [for whom there is no collective bargaining agreement] are at-will employees who, under Texas law, may not bring fraud claims for the termination of their employment.").

Sapp's allegations fail to state a claim for fraud against Watkins.

<u>Tortious interference with a contract</u>

To establish tortious interference with a contract under Texas law, a plaintiff must show: (1) the existence of a contract; (2) willful and intentional interference; (3) interference that proximately caused damages; and (4) actual damage or loss. *Alviar v. Lillard*, 854 F.3d 286, 289 (5th Cir. 2017). When, as is the case with Watkins, "the defendant is both a corporate agent and the third party who allegedly induced the corporation's breach, the second element is particularly important." *Id.* (quotation marks omitted). In order to maintain a claim for tortious interference against a corporate agent or representative, the plaintiff "must show that the agent acted willfully and intentionally to serve the agent's personal interests at the corporation's expense." *Id.* (quotation marks omitted). Such a showing is impossible if the corporation does not complain about its agent's actions. *Id.* at 290; *see also Morgan Stanley & Co., Inc. v. Texas Oil Co.*, 958 S.W.2d 178, 181–82 (Tex. 1997) ("Tenneco is certainly a better judge of its own best interests than we are, or than a jury would be. . . . While a principal's complaint is not conclusive of whether its agent has acted in its best interest, absent any complaint an

agent cannot be said to have acted contrary to its principal's best interests."). It naturally follows that, if the corporation explicitly ratifies its agent's actions, a tortious interference claim against the agent is "foreclosed under Texas law." *Denson v. BeavEx, Inc.*, 612 Fed. App'x 754, 757 (5th Cir. 2015).

Sapp's state-court pleading explicitly and repeatedly states that Chamberlain ratified Watkins's actions (Dkt. 1-1 at pp. 3, 6, 7). Sapp offers no facts showing that Chamberlain ever complained about Watkins's actions. Sapp's claim against Watkins for tortious interference is barred by Texas law. *Alviar*, 854 F.3d at 289–90; *Denson*, 612 Fed. App'x at 757.

## B. Dismissal of Watkins

The Court concludes that there is no reasonable basis to predict that Sapp might be able to recover against Watkins with the allegations contained in her state-court petition. Accordingly, the Court concludes that Watkins was improperly joined to defeat diversity. Since the amount-in-controversy requirement is met, Watkins is dismissed without prejudice, and the case continues against Chamberlain. *International Energy Ventures*, 818 F.3d at 206, 209–10 & n.50.

## THE MOTION TO DISMISS

The Court now turns to the pending motion to dismiss. In order to rule on the motion, the Court must utilize the federal pleading standards discussed earlier in this opinion and determine whether the well-pleaded factual allegations in Sapp's live complaint, when taken as true and viewed in the light most favorable to Sapp, state a claim against Chamberlain that is plausible on its face. *Amacker*, 657 F.3d at 254; *Lone*

*Star Fund*, 594 F.3d at 387. The Court concludes that Sapp has failed to state a plausible claim for relief against Chamberlain.

### A.    Fraud

Sapp's claim for fraud against Chamberlain fails for the same reasons as her claim for fraud against Watkins. Sapp's live complaint adds nothing of substance to the fraud allegations from her state-court petition. Sapp's allegations again include none of the information that Federal Rule of Civil Procedure 9(b) requires and again provide no basis for recovery under a fraud cause of action in light of the Texas Supreme Court's *Sawyer* opinion (Dkt. 9 at p. 8).

### B.    Tortious interference with a contract

Sapp's claim for tortious interference with a contract against Chamberlain fails because, under Texas law, "a person must be a stranger to a contract to tortiously interfere with it[.]" *Morgan Stanley*, 958 S.W.2d at 179. Sapp specifically alleges that the contract at issue is the employment relationship between Sapp and Chamberlain (Dkt. 9 at p. 6).

### C.    Breach of contract

Sapp's claim for breach of contract against Chamberlain also fails. In her live complaint, Sapp acknowledges that she had an at-will employment relationship with Chamberlain (Dkt. 9 at p. 6). However, she alleges that Chamberlain modified that at-will arrangement through an email that Watkins sent to Sapp (Dkt. 9 at p. 6). Sapp alleges that Watkins said the following in her email:

> if you revised the questions then you created them, they are good questions,
> all I needed was an explanation and thank you for it.
> Dkt. 9 at p. 6.

According to Sapp, the email constituted:

> an express agreement by Defendant Watkins authorizing and ratifying the
> method by which Plaintiff handled her exam questions. This is known as an
> exception to employment at will. Defendants breached its [sic] contract
> with Plaintiff regarding this express ratification when Defendant
> Chamberlain fired Plaintiff for these very reasons.
> Dkt. 9 at p. 6.

Based on the limited information provided in Sapp's live complaint, the Court
disagrees with Sapp's contention that Watkins's email represented a binding modification
of the at-will employment arrangement between Sapp and Chamberlain. As previously
noted, in order to overcome the presumption of at-will employment under Texas law, an
employee must point to statements by an employer that "unequivocally indicate a definite
intent to be bound not to terminate the employee except under clearly specified
circumstances." *Midland Judicial District*, 92 S.W.3d at 487 (quotation marks and
ellipsis omitted). "An employee who has no formal agreement with his employer cannot
construct one out of indefinite comments, encouragements, or assurances." *Montgomery
County Hospital District v. Brown*, 965 S.W.2d 501, 502 (Tex. 1998). When determining
whether a statement by the employer constitutes a modification of the at-will
arrangement, a court "must distinguish between carefully developed employer
representations upon which an employee may justifiably rely, and general platitudes,
vague assurances, praise, and indefinite promises of permanent continued employment."

*Id*. (quotation marks omitted). Without more contextual facts to bolster them, Sapp's allegations describe, at most, a vague assurance or an indefinite comment by Watkins.

Two cases out of intermediate Texas appellate courts help demonstrate how a plaintiff can establish that an at-will employment arrangement has been modified. In the first case, the plaintiff was the manager of scheduling and charters of a bus company, and he expressed concern to his employer's parent company's regional safety director about safety compliance. *El Expreso, Inc. v. Zendejas*, 193 S.W.3d 590, 593 (Tex. App.—Houston [1st Dist.] 2006, no pet.). The regional safety director "discovered fairly substantial deviations from safety laws" during a safety audit of the subsidiary, and she repeatedly requested that the plaintiff help bring the subsidiary into compliance with the applicable safety regulations. *Id*. Because senior company officials at the subsidiary ignored or responded with hostility to the plaintiff's reports of safety violations, the plaintiff repeatedly "expressed concern that he would be terminated if he followed [the regional safety director's] instructions to ensure compliance with safety laws." *Id*. The regional safety director repeatedly "reassured [the plaintiff] that he would not be fired for complying with safety regulations" and "told [the plaintiff] several times that he would not be fired for ensuring compliance with safety laws." *Id*. at 593, 596. When the plaintiff was then fired for his actions in connection with an investigation into safety violations, he sued the subsidiary and the parent company for wrongful termination based on a breach of contract. *Id*. at 592, 594. The plaintiff prevailed at trial. *Id*. at 592. The companies appealed, arguing that the parent company's regional safety director's statements were

too vague to modify the plaintiff's at-will status. *Id.* at 594. In rejecting the companies'

argument, the First Court of Appeals of Texas held that:

> the agreement in this case set forth an express agreement between [the companies] and [the plaintiff] that showed a clear and specific limitation on the right to terminate. The agreement did not contain ambiguous terminology or require speculation as to the parameters of the parties' purported agreement. Rather, the agreement was based on a clear set of standards—that [the plaintiff] would not be terminated for attempting to comply with federal and state safety laws.
>
> Likewise, the record shows that [the plaintiff] specifically expressed concern about whether he would be fired for attempting to bring [the subsidiary] into compliance with safety laws. The record shows that a [parent company] employee, [the plaintiff's] superior, responded specifically and definitely that [the plaintiff] would not be terminated for doing so. Taken in the context of the entire case, the agreement between [the plaintiff] and [the companies] communicated the clear message that [the plaintiff] would not be fired for attempting to make [the subsidiary] comply with a discrete set of applicable safety regulations.
> *Id*. at 595 (citations omitted).

*Zendejas* cites another illustrative Texas case, *Miksch v. Exxon Corp.*, 979 S.W.2d

700 (Tex. App.—Houston [14th Dist.] 1998, pet. denied). The plaintiff in *Miksch* was

subject to a written conflict-of-interest policy that barred her and her husband from

competing with her employer, Exxon, without first obtaining the approval of

"management." *Miksch*, 979 S.W.2d at 701–02. When the plaintiff's husband expressed

interest in leasing and operating a Chevron service station, the plaintiff asked her

immediate supervisor if her husband's business venture would threaten her employment

with Exxon, and the supervisor replied that the venture "would not be a problem at all[.]"

*Id.* (quotation marks omitted). The plaintiff's husband then began operating the Chevron

station. *Id*. Several years later, Exxon revised its conflict-of-interest policy to require the

approval of "department heads or higher level executives" for potential conflicts of interest. *Id.* (quotation marks omitted). Senior management informed the plaintiff that she and her husband were in violation of the revised policy. *Id.* When the plaintiff refused to tell her husband to relinquish control of the Chevron station, Exxon fired her. *Id.* The plaintiff sued Exxon on the theory that the statements made by her immediate supervisor before Exxon revised its conflict-of-interest policy modified the plaintiff's at-will employment status. *Id.* at 702–03. In reversing a summary judgment for Exxon, the Fourteenth Court of Appeals of Texas held that:

> [the supervisor's] statement to [the plaintiff] does not contain ambiguous terminology or require one to speculate as to the parameters of the parties' purported agreement. The summary judgment proof shows [the plaintiff] specifically asked [the supervisor] whether her husband's plan to lease and operate the 43rd Street Chevron would threaten her position with Exxon. [The supervisor's] response is specific and definite, and when viewed in its proper context, communicates the clear message that [the plaintiff] would not be fired for what ordinarily would have violated Exxon's conflicts policy. Accordingly, we cannot conclude that [the supervisor's] statement was, as a matter of law, insufficient to modify [the plaintiff's] at-will employment status.
> *Id.* at 705.

Sapp's breach-of-contract allegations lack the clarity and specificity of those discussed in the *Zendejas* and *Miksch* opinions. Without the sort of contextual information provided by the *Zendejas* and *Miksch* plaintiffs, Watkins's email does not rise beyond a vague assurance or an indefinite comment. Sapp has accordingly failed to plead sufficient facts to show that Watkins's email modified Sapp's at-will employment status.

Sapp has failed to state a plausible claim for relief against Chamberlain.

## CONCLUSION

The defendants' motion to dismiss (Dkt. 27) is **GRANTED** as to Sapp's claims against Chamberlain. Sapp's claims against Chamberlain are **DISMISSED WITHOUT PREJUDICE**. Watkins was improperly joined and must be dismissed without prejudice, so the motion to dismiss is **DENIED AS MOOT** as to Sapp's claims against Watkins.

Sapp may file an amended complaint repleading her claims against Chamberlain within 14 days of the date of entry of this opinion. *See Young v. City of Houston*, 599 Fed. App'x 553, 555–56 (5th Cir. 2015).

SIGNED at Houston, Texas, this 9th day of July, 2020.

GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE